IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
CHARTER HR, INC.,              )
                               )
     Plaintiff,                )
                               )       CIVIL ACTION NO.
     v.                        )       2:13cv466-MHT
                               )            (WO)
UNITED STATES OF AMERICA,      )
                               )
     Defendant.                )
```

OPINION AND ORDER

Plaintiff Charter HR, Inc. brings this lawsuit against defendant United States of America challenging tax liens that have been issued by the Internal Revenue Service (IRS) against Charter's business assets. Charter brings this action under 28 U.S.C. § 2410, which allows the United States to be named as a party in an action to quiet title to property on which it has placed a lien, and asserts jurisdiction through 28 U.S.C. § 1340.

This cause is now before the court on Charter's motion for a preliminary injunction. For the reasons that follow, this court concludes that the company's motion is

foreclosed by the Anti-Injunction Act, 26 U.S.C. § 7421(a), and that, accordingly, this court lacks jurisdiction to grant the company the relief it requests.

## I.

On July 1, 2013, Charter received a notice that the IRS had issued three tax liens against it, each based on an alleged alter-ego relationship with Nathan Wayne Stark, Skilstaf, Inc., and PACA, Inc., respectively. Charter, Skilstaf, and PACA are all professional-employer organizations, and Stark owns the latter two organizations.

Charter does not dispute the tax liability of Skilstaf and PACA; instead, it argues that it is not an alter ego of these entities or of Stark and that, accordingly, it is not liable for the taxes they owe.

Charter contends that the existence of these liens will place its very viability as a company at risk. In its most emphatic argument portending this scenario, the

company explains that it must make quarterly filings in order to renew its licenses in the States in which it operates. It asserts that, if it must report the existence of these tax liens, its licenses will be revoked.

Charter now asks this court to prevent that grave result by issuing a preliminary injunction directing the IRS to terminate any liens against its property and not to issue any further such liens. The United States argues that this relief is barred by the Anti-Injunction Act, which provides that, outside of certain enumerated statutory exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a).

II.

Although it does not claim that it falls within one of the statutory exceptions to the Anti-Injunction Act, Charter offers a number of arguments for why this court may decide its motion for injunctive relief. The argument that Charter advances most forcefully in its brief is that the Act does not bar a quiet-title action brought under 28 U.S.C. § 2410 when that action does not challenge the underlying assessment of a tax lien.

A plaintiff may bring suit under § 2410 to challenge the procedural validity of a tax lien (but not the merits of the underlying tax assessment). See <u>MacElvain v. United States</u>, 867 F. Supp. 996, 1001 (M.D. Ala. 1994) (Thompson, J.). However, while § 2410 may be a valid means of seeking release from a federal lien, this does not mean that this statute authorizes a plaintiff to obtain <u>injunctive</u> relief that the Anti-Injunction Act otherwise prohibits.

4

In order to argue that the Anti-Injunction Act does not prevent it from obtaining injunctive relief, Charter relies heavily on the decision of the Ninth Circuit Court of Appeals in United States v. Coson, 286 F.2d 453 (9th Cir. 1961). In that case, Coson brought suit under § 2410 when the United States claimed an interest in his property by filing a tax lien. Coson argued that the lien was invalid because he had never been a general partner in the organization whose operation gave rise to the underlying taxes and because the government had never demanded that the Coson pay taxes, as was required by statute. The government argued that the suit was tantamount to an attempt to enjoin the collection of taxes and thus was barred by the Anti-Injunction Act. The appellate court concluded that § 2410 plainly authorizes this type of suit and that it "[could ]not assume that all Government tax liens were excluded from the meaning of § 2410(a)." Coson, 286 F.2d at 458-59. However, this holding does not go so far as Charter contends it does. Coson simply found

that the Act did not bar the quiet-title action and <u>not</u> that injunctive relief would be permissible.  Indeed, in reaching its conclusion, the court reasoned that "the only type of relief needed here is a decree holding the tax lien a cloud on [Coson]'s title and cancelling it.  <u>There is no need for any injunctive relief</u>."  <u>Id</u>. at 459 (emphasis added).

Similarly, the Second Circuit Court of Appeals, in discussing § 2410, also noted the difference between a quiet-title action and an injunction. <u>See Falik v. United States</u>, 343 F.2d 38, 42 (2d Cir. 1965) (agreeing with the plaintiff "that an action to quiet title is not a suit for an injunction and, more particularly, not a suit 'for the purpose of restraining the assessment or collection of any tax,' which § 7241(a) ... forbids.").

Thus, this court is unconvinced that challenging a lien under § 2410 gives the plaintiff a valid means by which to circumvent the Anti-Injunction Act.  While Charter may be able to pursue its quiet-title action under

6

that statute, it does not create a viable avenue for injunctive relief.

Charter also seeks to escape the roadblock posed by the Anti-Injunction Act by relying on South Carolina v. Regan, 465 U.S. 367 (1984), in which the Supreme Court observed that an exception to the Act exists where the plaintiff cannot seek relief by any alternative means (such as a refund suit). Concluding that "Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy," the Court found that, where no alternate remedy exists, the Act does not bar the suit. Id. at 378.

Charter argues that, by the time it avails itself of a refund suit, there would be "no Charter left in existence." Pl.'s Br. (Doc. No. 29) at 7. Thus, Charter argues that, because the liens threaten its viability, if the court does not grant injunctive relief, the company may go out of business and will not survive to challenge

7

the liens.  However, these are different circumstances from those addressed by the Court in Regan.  In that case, the plaintiff, South Carolina, would incur no tax liability itself as a result of the challenged law (because the tax would be on its bondholders instead), and would therefore be unable later to sue for a refund.  Here, on the other hand, Charter does not contest that damages can be sought for wrongful liens.  The practical barriers to alternative remedies that Charter may face are simply different in kind from the nonexistence of alternative remedies that the Court addressed in Regan.

Charter does not cite any cases that conclude that there was no alternative remedy as contemplated by the Court in Regan where a lien threatens to put a company out of business before it can challenge it.  The court today thus sees no reason to widen the exception that the Court created in Regan so that Charter might pass through it.

Nor can Charter satisfy the exception to the Anti-Injunction Act that the Supreme Court created in Enochs v.

Williams Packing & Navigation Co., 370 U.S. 1 (1962). There, the Court found that a court in equity could issue an injunction that the Act would otherwise bar where (among other requirements) "it is clear that under no circumstances could the Government ultimately prevail." Id. at 7 (emphasis added). Because it is by no means clear to this court that the government could not prevail in this suit, Charter finds no respite from the Act in this exception.

"Property held by an 'alter ego' of the taxpayer is subject to collection for the taxpayer's tax liability." Eckhardt v. United States, 463 F. App'x 852, 855 (11th Cir. 2012). The determination of whether those entities are alter egos is made under state law. See Old West Annuity and Life Ins. Co. v. Apollo Group, 605 F.3d 856, 861-62 (11th Cir. 2010). Thus, this court is guided by the Alabama Supreme Court's refusal to recognize separate corporate existence "where a corporation is so organized and controlled and its business conducted in such a manner

9

as to make it merely an instrumentality of another." C.E. Development Co. v. Kitchens, 264 So.2d 510, 515 (Ala. 1972) (quotations and citations omitted).  Both in its brief and at the hearing in this court on July 23, 2010, Charter insisted that it is wholly separate from Skilstaf, PACA, and Stark.  Charter explains that no members of its board of directors serve on the boards for Skilstaf or PACA and that it engages only in arms-length transactions with those entities.  Charter further submits that Stark is not an employee, officer, or director of Charter and plays no role in its management or decisionmaking. Instead, Stark is merely employed by a business called MCI Management Services, Inc., which provides consulting and information technology services for Charter.

The government contests Charter's position.  It explains that, in 2010, both Skilstaf and PACA defaulted on installment agreements that each had made with the IRS to pay employment tax liabilities.  In order to continue to maintain a professional employer organization with

Skilstaf's and PACA's clients, but avoid their tax liabilities, Stark created a trust for his children, which was then used to capitalize Charter and which still controls it today.  In other words, according to the government, Charter is effectively a successor to Skilstaf and PACA, designed to maintain those businesses free of their debts to the government.  The government presented a number of exhibits at the hearing supporting this account.

Charter disputes the government's characterization of its relationship with Stark, Skilstaf, and PACA.  Instead, Charter maintains that it was created in 2010 by a group of managers who, separately from Stark, wished to form a new company because it was clear that Skilstaf and PACA would eventually buckle under the weight of their tax liabilities.  Charter states that the only assets it acquired from Skilstaf were furniture, but acknowledges that it gained access to Skilstaf's and PACA's client lists and some of its employees and managers as well.

11

The court does not decide at this point, based on the limited record before it, whether Charter is, indeed, an alter ego of Stark, Skilstaf, and PACA.  However, it cannot conclude that there are no circumstances under which the government may prevail.  Therefore, Charter does not fall within the equitable exception to the Anti-Injunction Act recognized by the Supreme Court in <u>Enochs</u>.

\*\*\*

Accordingly, it is ORDERED that, because the court lacks jurisdiction to grant plaintiff Charter, HR, Inc. the injunctive relief it requests, its motion for a preliminary injunction (doc. no. 15) is denied.

DONE, this the 26th day of July, 2013.

    <u>    /s/ Myron H. Thompson    </u>
    **UNITED STATES DISTRICT JUDGE**